IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

BK 04-70681-CMS-7

ROBERT DEAN PRUITT,

      DEBTOR.

AP 04-70047-CMS

JACK KEY, and
RITA KEY,

      PLAINTIFFS,

vs.

ROBERT DEAN PRUITT,
a/k/a Roofing & Sheet Metal, Inc. Pruitt, and
a/k/a Roofing & Sheet Metal Unincorp Pruitt;

      DEFENDANT.

## MEMORANDUM OF DECISION

This matter came before the court for trial on plaintiffs Jack and Rita Keys' complaint seeking to have damages owed by debtor Robert Dean Pruitt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2). The court finds that judgment must be entered **IN FAVOR OF THE KEYS** and **AGAINST PRUITT.**

## FINDING OF FACTS

The court heard the testimony of the plaintiff/creditor Jack Key and of the defendant/debtor Robert Dean Pruitt at a trial held September 8, 2005. The facts in evidence indicate the following:

Jack and Rita Key planned to do some remodeling on their home in early 2003. The job was to entail adding a room, reroofing the house, and covering its exterior with vinyl siding. The Keys

1

solicited bids and received estimates ranging from a high of approximately $38,000.00 to debtor Robert Dean Pruitt's low bid of $15,500.00. The Keys accepted Pruitt's low bid, and on March 22, 2003 entered into a written agreement with the debtor, doing business as Pruitt Roofing and Sheet Metal, for the $15,500.00 agreed price.

Key testified that he met with Pruitt at his home where Pruitt represented to him that he was a licensed and insured homebuilder. The debtor began the remodeling job. Testimony was in dispute as to the exact extent Pruitt completed the work. However, at a minimum, the foundation was completed, the room addition was framed, and a new roof was placed on the house before Pruitt left the job.

During construction, a state inspector came to the job site and ordered Pruitt to discontinue work. Pruitt had a roofing license, but did not have a license for homebuilding as required for projects in excess of $10,000.00.

Pruitt testified that the project was to consist of three parts – one-third roofing, to be done by him; one-third carpentry, to be done by Tim Rainer; and one-third vinyl siding, to be done by Ed Jordan. Pruitt referred to this as a joint venture with Rainer and Jordan. He stated that the $15,500.00 estimate was really a total of three separate costs for the three parts of the work. However, only one contract was entered into.

Apparently, this explanation did not satisfy the under-$10,000.00 exception for requirement of a homebuilding license. Pruitt testified that he had not finished reroofing the Key house at the time of the stop order. He said he advised the state inspector that he intended to complete the roof in order to protect Keys' property. He stated that he finished the roof over the weekend despite the stop order.

2

The Keys had paid Pruitt $10,500.00 prior to the stop order. Other than the roof, the work had not been completed, and the Keys hired the debtor's carpenter, Tim Rainer, to finish the job. Key testified that it cost him an additional $20,000.00 to complete the remodeling.

Pruitt testified that prior to the stop order he had paid $2,000.00 for the roofing materials, plus $3,600.00 for other construction materials. In addition, he had already paid Tim Rainer $2,000.00 for carpentry; and paid $2,500.00 to Hank Tomlin for roofing work. These payments accounted for a total of $10,100.00 of the $10,500.00 he received before the stop order.

Pruitt also testified he could not have completed the job for the $15,500.00 he bid, but that he would have finished it at a loss if the state inspector had not stopped him. Subsequent to these events, Pruitt was charged with what appears to have been doing business without a license, pleaded guilty to a misdemeanor, and was assessed a $2,000.00 fine.

Pruitt filed a Chapter 7 bankruptcy petition on March 9, 2004. On June 10, 2004, the Keys filed this lawsuit seeking have their claim against Pruitt held nondischargeable as obtained by fraud in the meaning of 11 U.S.C. § 523(a)(2)(A).

## CONCLUSIONS OF LAW

This court has jurisdiction of Robert Dean Pruitt's Chapter 7 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this lawsuit, a core bankruptcy proceeding arising under the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The jurisdiction is referred to this court pursuant to 28 U.S.C. § 157(a), by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

### I.

### **A creditor must prove the elements of common law fraud**

3

**to establish Section 523(a)(2)(A) nondischargeability.**

Section 523(a)(2)(A) excepts debts created by a fraudulent representation from the discharge available under Chapter 7 of the Bankruptcy Code.

Federal courts have generally held that creditors objecting to discharge under 11 U.S.C. § 523(a)(2)(A) must prove the elements of common law fraud by a preponderance of the evidence. Those elements include evidence that the debtor made a false representation in order to deceive the creditor, that the creditor justifiably relied on the falsehood, and that the false representation was the proximate cause of damages to the creditor. See Field v. Mans, 516 U.S. 59, 70-71 (1995); Securities and Exchange Commission v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281-82 (11th Cir. 1998); and Pleasants v. Kendrick (In re Pleasants) 219 F.3d 372 (4th Cir. 2000) (which is factually similar to Pruitt).

These facts must be judged under Section 523(a)(2)(A) since the primary false representation alleged was made orally, and not in writing as under Section 523(a)(2)(B).

Section 523(a)(2)(A) reads as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt --

>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>   >   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

Courts must require proof of all elements by a preponderance of the evidence to hold a debt nondischargeable under Section 523(a)(2)(A). See Grogan v. Garner, 498 U.S. 279, 291 (1991). Elements of the required common law fraud case, can be , and usually are, deduced by the court from

4

all the circumstances on a case-by-case basis. In some cases, an intentional omission or failure to disclose material information can constitute the misrepresentation as required by Section 523 (a)(2)(A). See Peterson v. Bozzano (In re Bozzano), 173 B.R. 990, 993 (Bankr. M.D. N.C. 1994); and Hanft v. Church (In re Hanft), 315 B.R. 617 (S.D. Fla. 2002), aff'd Hanft v. Church, 73 Fed.Appx. 387 (11th Cir. 2003), (table listing). Likewise the debtor's intent to deceive and the creditor's justifiable reliance, is usually shown with "all the circumstances" evidence. Additionally, the creditor must identify damages flowing from the debtor's fraudulent representation.

## II.

### The Keys have proved that their damage claim should be nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Construction disputes have been a fairly frequent source of Section 523(a)(2)(A) complaints in bankruptcy cases. They have often centered on a contractor's workmanship, or the lack of workmanship, which allegedly damaged the creditor. Sometimes the question has turned on a representation about a required license, as in this case.

For example, in Gem Ravioli, Inc. v. Creta (In re Creta), 271 B.R. 214 (1st Cir. BAP 2002), the contractor Creta was found to have represented that he was licensed by the State of Rhode Island to perform refrigeration and air-conditioning work. The creditor, Gem Ravioli, Inc., hired Creta and paid him to install two air-conditioning units. Creta was not licensed and shortly after installation both units failed. After Creta filed Chapter 7 bankruptcy, Gem Ravioli sued to have its $7,053.78 state court damage judgment against him held nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The First Circuit Bankruptcy Appellate Panel held, on appeal[1], that Creta's misrepresentation

---

[1] The Rhode Island Bankruptcy Court ruled in favor of the debtor, construing Section 523(a)(2)(A) to require the creditor to prove both that Creta knew his statement that he was

5

of his status induced the contract and "deprived Gem Ravioli of the opportunity to contract with a qualified refrigeration technician." The court stated:

> It is clear that the Rhode Island licensing requirements for licensing refrigeration technicians is not simply a registration or revenue raising scheme, but rather the statute was enacted to ensure a certain level of competency by refrigeration technicians.
>
> Thus, when an individual asserts that he possesses a refrigeration license, whether it be an apprentice's license, a journeyperson's license, or a master's license, he is making a representation that he possesses the necessary level of skill and knowledge to perform refrigeration and air conditioning work. <u>A misrepresentation as to whether a debtor has such a license goes to the very essence of the agreement</u>, i.e., the reliance of the contracting party that the debtor has the requisite knowledge, experience, and training <u>to properly complete the work</u>. (emphasis added)

Creta, 271 B.R. at 220.

The panel held that Gem Ravioli met its initial burden of showing that Creta's misrepresentation resulted in the damage, and that the debtor failed to rebut that prima facie case by producing evidence of subsequent intervening causes for the damages. The panel found that the $7,053.78 judgment debt was nondischargeable pursuant to Section 523(a)(2)(A).

In Pleasants v. Kendrick (In re Pleasants), 219 F.3d 372 (4th Cir. 2000), the Fourth Circuit had also held that a remodeling contractor's representation that he was a licensed architect was the proximate cause of the creditor/homeowner's harm (having to pay third parties to correct and finish the job), and made the debtor liable for all such costs. The Fourth Circuit held that the homeowner's $1,262,296.00 in damage was nondischargeable under Section 523(a)(2)(A).

Morlang v. Cox, 222 B.R. 83 (W.D. Va. 1998) also involved the expenses/damages a

---

licensed was false <u>and</u> that he knew that his work under the contract would be defective, when he made the statement. The First Circuit BAP reversed the Bankruptcy Court, holding that the debtor's knowledge that he was not licensed alone satisfied the intentional false statement requirement.

homeowner incurred to correct and finish a residential addition started by a contractor who falsely stated he was properly licensed. Morlang, the creditor, showed that the debtor, Cox, had falsely represented to her that "he had a Roanoke County business license which permitted him to legally perform the contracting work without a contractor's license."

Morlang entered a $9,000.00 contract for the work October 24, 1994. On March 22, 1995, Cox walked off the job, claiming that he had already incurred. $9,655.43 in costs on the unfinished work.

The creditor obtained a $7,179.00 state court judgment, plus interest, for breach of contract. Additionally, Cox was convicted of contracting without a state license under Virginia law. The debtor subsequently filed a no-asset Chapter 7. The District Court relied on Cohen v. De La Cruz, 523 U.S. 213 (1998) to hold that all of Morlang's subsequent completion costs were nondischargeable against Cox under Section 523(a)(2)(A). See the factually similar Peterson v. Bozanno (In re Bozzano), 173 B.R. 990 (Bankr. M.D. N.C. 1994) which was indirectly abrogated on other grounds by the 1998 Cohen decision. The North Carolina Bankruptcy Court had held that all Peterson's repair/completion costs were nondischargeable in Bozzano's bankruptcy – but not the full amount of treble damages which would have been allowed under North Carolina law. See also Sinha v. Clark (In re Clark), 2005 WL 2456246, (Bankr. C.D. Ill. 2005).

In Cohen, the Supreme Court held that a Chapter 7 debtor's obligation for the triple damages claimed under the New Jersey Fraud Act comprised the nondischargeable debt under Section 523(a)(2)(A). The court held that it was not Congress' intent to limit damages to funds the creditor had actually paid the debtor. The Court stated:

> ... [I]f, as petitioner would have it, the fraud exception only barred discharge of the value of any money or property, etc., fraudulently obtained by the debtor, the objective of ensuring full recovery by the creditor would be ill served. Limiting the exception to the value of the money

7

or property fraudulently obtained by the debtor could prevent even a compensatory recovery for losses occasioned by fraud. For instance, if a debtor fraudulently represents that he will use a certain grade of shingles to roof a house and is paid accordingly, the cost of repairing any resulting water damage to the house could far exceed the payment to the debtor to install the shingles. ... As petitioner acknowledges, his gloss on § 523(a)(2)(A) would allow the debtor in those situations to discharge any liability for losses caused by his fraud in excess of the amount he initially received, leaving the creditor far short of being made whole.

Cohen, 523 U.S. at 222.

In the Key/Pruitt case now before this court, the evidentiary record is scanty on both sides. It is almost completely limited to the hearing testimony of Key, the plaintiff; and Pruitt, the defendant. However, both parties rested their cases based on this record and these are the only evidentiary facts the court has under submission for decision .

Key testified that Pruitt specifically stated to him in a conversation at his house that Pruitt was a licensed and insured homebuilder. Pruitt offered only vague assertions in response to the testimony, and never specifically denied that he made the statement. The creditor and the debtor then entered a single $15,500.00 remodeling contract based on the conversation.

Subsequently, both sides acknowledge that the State of Alabama stopped the job because Pruitt was not properly licensed to go forward. It is undisputed and material that Pruitt's failure to have a license resulted in his failure to complete the job, making the misrepresentation the proximate cause of what came after. Further, Pruitt did not deny in any way that the Keys spent still another $20,000.00 to complete the remodeling after he was forced to stop work.

To sum up: the record shows that Pruitt represented to Key that he was properly licensed to handle the remodeling job; that Pruitt was not licensed as a homebuilder for jobs of more than $10,000.00; that the Keys justifiably relied on the false representation and contracted with Pruitt to do the job for $15,500.00; that a state license inspector ordered Pruitt to stop the job and that he was

later fined $2,000.00 for performing unlicensed work; that his misrepresented license status shut down the job; and that the Keys had spent a total $35,500.00 by completion, $20,000.00 of it after the stop order.

Consequently, the court must find that the plaintiff met his burden of showing Section 523(a)(2)(A) fraud by a preponderance of the evidence in the record. The court finds that the creditor's $20,000.00 in additional completion cost is nondischargeable in Chapter 7 because it resulted from a false representation.

## CONCLUSION

Judgment is due to be entered **IN FAVOR OF THE PLAINTIFF**, and **AGAINST THE DEFENDANT** in this lawsuit. An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this October 27, 2005.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge
